UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:                                                    Chapter 7

Samuel Racer,                                             Case No. 16-41843-cec

                              Debtor(s).

-------------------------------------------------------------x

Rita Shamshovich,
                                                          Adv. Pro. No. 16-01146-cec
                              Plaintiff,

        -against-

Samuel Racer,

                              Defendant.

-------------------------------------------------------------x


DECISION ON MOTION FOR SUMMARY JUDGMENT



APPEARANCES

David Shamshovich, Esq.                    Samuel Racer, Pro Se
2 Northside Piers, Apt 25N
Brooklyn, New York 11249
*Counsel for Plaintiff Rita Shamshovich*



CARLA E. CRAIG
Chief United States Bankruptcy Judge

This matter comes before the Court on the motion for summary judgment of Rita Shamshovich (the "Plaintiff"), a judgment creditor of Samuel Racer (the "Debtor" or "Defendant"),  seeking a denial of discharge pursuant to 11 U.S.C. §§ 727(a)(2)(A), 727(a)(3), 727(a)(4)(A) and 727(a)(5), or to except from discharge the debt owed to her by the Debtor pursuant to 11 U.S.C. § 523(a)(4).[1] Plaintiff alleges that Defendant committed defalcation while acting in a fiduciary capacity, concealed property within one year before the filing of this case with the intent to defraud creditors, knowingly made false oaths or accounts in connection with this case, failed to keep or preserve records sufficient to ascertain Defendant's financial condition or business transactions, and failed to satisfactorily explain the loss of assets. Defendant opposes the motion, and has moved to dismiss this adversary proceeding to the extent that it seeks a determination of non-dischargeability under § 523(a)(4).  Because the debtor has failed to keep or preserve records sufficient to ascertain his financial condition or business transactions, and failed to satisfactorily explain the loss of $1.5 million in loan proceeds received pre-petition, the motion for summary judgment is granted and Defendant's discharge is denied.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1996. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(J). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

## BACKGROUND

The facts set forth below are not in dispute except where otherwise noted.

On April 28, 2016, Defendant filed a voluntary petition under chapter 7 of the

---

[1] All statutory references are to the Bankruptcy Code, 11 U.S.C. § 101 et seq., unless otherwise indicated.

Bankruptcy Code. (Pet., Case No. 16-41843, ECF No. 1.)[2] In the Defendant's schedules, he lists $9,500 in total assets and $2,388,584 in total liabilities. (Am. Schedules, Case No. 16-41843, ECF No. 10.) He lists multiple commercial and personal loans on his schedules with an aggregate amount of almost $1.5 million. (Id.) The following is a list of these loans:

1.     $368,000 first mortgage on Defendant's home located at 2330 East 70th Street, Brooklyn, NY

2.     $125,000 second mortgage on the Home

3.     $102,500 third mortgage on the Home

4.     $50,000 personal loan from Defendant's father, Bernard Racer

5.     $125,000 personal loan from Defendant's friend, Gershon Booso

6.     $110,000 personal loan from Defendant's deceased father-in-law, Herman Szpanderfer

7.     $450,000 personal loan from Defendant's cousin and his wife, Samuel and Irene Racer

8.     $52,500 personal loan from Defendant's friend, Lazar Feygin

9.     $30,000 personal loan from Defendant's friend, Oleg Nashtatik

10.    $75,000 personal loan from Defendant's sister, Rose Gladstone

(Id.) According to Defendant's schedules, all of these loans were incurred between 2009 and 2012. (Id.)

Plaintiff is a judgment creditor of the Defendant. Her claim against the Defendant arises from the following events. Defendant was an attorney who represented Yakov Shvartsman ("Shvartsman") in 1989 in several transactions in which the Plaintiff made loans to Shvartsman.[3] (Pl.'s Mem. Supp. Mot. Summ. J. ¶¶ 2, 3, ECF No. 29; Def.'s Mot. Dismiss ¶ 6, ECF No. 32.).

---

[2] All references to "ECF No." are to the docket in this adversary proceeding, Adv. Pro. No. 16-01146, unless otherwise indicated.
[3] The Defendant was suspended from the practice of law in New York in 2008 for an unrelated matter.

Their agreements provided for all the stock certificates of Shvartsman's wholly owned corporations (the "Collateral") to be held in escrow by the Defendant as security for the loans. (Decl. Pl.'s Att'y Supp. Mot. Summ. J. Ex. 1, 2, 12, ECF No. 31.). Shvartsman later defaulted and the Plaintiff demanded the Collateral from the Defendant. Defendant first denied he was an escrow agent and claimed the Collateral was transferred to another law firm, but after the Plaintiff filed a professional misconduct complaint against him, admitted he had the Collateral in his possession since 1989. (Id. Ex. 7, 10, 11.). Defendant was admonished by the Disciplinary Committee of the Appellate Division, First Department for his failure to perform his duty as escrow agent. (Id. Ex. 12). Plaintiff also filed a lawsuit against the Defendant in New York State Supreme Court (the "State Court") for breach of fiduciary duty and a default judgment was entered against the Defendant in the amount of $656,084.[4] (Id. Ex. 13, 44, 46; Decl. Pl.'s Att'y Opp'n to Def.'s Mot. Dismiss Ex. 9, ECF No. 35.).

On August 9, 2016, Plaintiff commenced the instant adversary proceeding. (Compl., ECF No. 1.). On June 1, 2017, after conclusion of discovery, Plaintiff filed a motion for summary judgment pursuant to §§ 523(a)(4), 727(a)(2)(A), 727(a)(3), 727(a)(4)(A) and 727(a)(5). (Pl.'s Mem. Supp. Mot. Summ. J., ECF No. 29.). On June 2, 2017, Defendant filed a motion to dismiss the adversary proceeding. (Def.'s Mot. Dismiss., ECF No. 32.). On June 16, 2017, Plaintiff filed

---

[4] A more detailed history of Plaintiff's case in the State Court is as follows: Plaintiff filed an action against the Defendant and Shvartsman in State Court on September 30, 1994. (Decl. Pl.'s Att'y Supp. Mot. Summ. J. Ex. 13, ECF No. 31.). The State Court granted a default judgment against both Shvartsman and the Defendant on February 14, 1996. (Id. Ex. 21.). The parties reached a settlement of the action on November 13, 1996. (Id. Ex. 22.). Pursuant to the terms of the settlement, Shvartsman would make payments to the Plaintiff and Plaintiff reserved the right to restore the case if Shvartsman defaulted. Shvartsman defaulted and the case was restored to calendar on August 3, 1999. (Id. Ex. 24.). On September 6, 2000, an inquest was held and the presiding judicial hearing officer issued an award of $296,000 to the Plaintiff. (Id. Ex. 30.). A judgment for the full amount, including interest, totaling $656,084 was entered on October 1, 2010. (Id. Ex. 33.). The Defendant moved to vacate the judgment and his motion was granted on March 9, 2012. (Id. Ex. 44.). Plaintiff then appealed and the Appellate Division of Second Department reversed the order vacating the judgment on October 23, 2013. (Id. Ex. 46.). On March 7, 2014, Defendant filed a second motion to vacate the judgment, but his motion was denied on December 2, 2014. (Id. Ex. 49, 52.).

an affirmation in opposition to Defendant's motion to dismiss. (Decl. Pl.'s Att'y Opp'n to Def.'s Mot. Dimiss, ECF No. 35.). On June 19, 2017, Defendant filed an affidavit in opposition to the motion for summary judgment (the "Defendant's Opposition"). (Def.'s Aff. Opp'n to Pl.'s Mot. Summ. J., ECF No. 37.) On June 30, 2017, Plaintiff filed a reply to the Defendant's Opposition. (Pl.'s Reply to Def.'s Aff. Opp'n, ECF No. 39.) On July 13, 2017, a hearing was held on the above motions and the Court reserved decision.

<u>STANDARD FOR SUMMARY JUDGMENT</u>

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In ruling upon a summary judgment motion, the Court's job is not to resolve disputed issues of fact, but to determine whether a genuine issue of fact exists. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "When viewing the evidence, the court must 'assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in [the non-movant's] favor.'" <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 41 (2d Cir.2000) (<u>citing</u> <u>Delaware & Hudson Railway Co. v. Consolidated Rail Corp.</u>, 902 F.2d 174, 177 (2d Cir.1990)), cert. denied, 540 U.S. 811, 124 S.Ct. 53, 157 L.Ed.2d 24 (2003). "The nonmoving party must show that there is more than a metaphysical doubt regarding a material fact and may not rely solely on self-serving conclusory statements." <u>Rosenman & Colin LLP v. Jarrell (In re Jarrell)</u>, 251 B.R. 448, 450–51 (Bankr. S.D.N.Y. 2000) (citations omitted).

<u>DISCUSSION</u>

Denial of discharge is an extreme penalty, and therefore, § 727 must be construed strictly against the objector and liberally in favor of the debtor. <u>State Bank of India v. Chalasani (In re</u>

<u>Chalasani)</u>, 92 F.3d 1300, 1310 (2d Cir. 1996). Courts must exercise even greater caution when considering denial of discharge sought by motion for summary judgment. <u>Desiderio v. Devani (In re Devani)</u>, 556 B.R. 37, 41 (Bankr. E.D.N.Y. 2016). However, a discharge in bankruptcy is a privilege, not a right, and is reserved only for the honest but unfortunate debtor. <u>Christy v. Kowalski (In re Kowalski)</u>, 316 B.R. 596, 600-01 (Bankr. E.D.N.Y. 2004).

Plaintiff argues that the Defendant's discharge should be denied under § 727(a)(3), on the grounds that the Defendant has failed to provide records from which his financial condition or business transactions may be ascertained.  Plaintiff also contends that the Defendant's discharge should be denied under § 727(a)(5), on the grounds that the Defendant has failed to explain satisfactorily the loss or deficiency of assets to meet his liabilities. Plaintiff points to the loans totaling $1.5 million, listed on Schedule E/F, that Defendant seeks to discharge, noting that the proceeds of these loans are not reflected on Schedule A/B, which lists assets having a total value of $9,500.  Plaintiff contends that insufficient documentation has been produced under § 727(a)(3) concerning these loan proceeds and their disposition, and further contends that the loss of these proceeds has not been satisfactorily explained under § 727(a)(5).

A.    <u>Failure to Keep or Preserve Records Under § 727(a)(3)</u>

Section 727(a)(3) denies discharge to a debtor when "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information…from which the debtor's financial condition or business transactions may be ascertained, unless such act or failure to act was justified under all the circumstances of the case." 11 U.S.C. § 727(a)(3). The purpose of this section is "to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs." <u>D.A.N. Joint Venture v. Cacioli (In re Cacioli)</u>, 463 F.3d 229, 234 (2d Cir. 2006) (citation omitted).

The initial burden under § 727(a)(3) lies with the plaintiff, who must "show that the debtor failed to keep and preserve any books or records from which the debtor's financial condition or business transactions might be ascertained." <u>Cacioli</u>, 463 F.3d at 235. Once the plaintiff has shown the absence or inadequacy of records, the burden shifts to the debtor to justify his failure to produce them. <u>Id.</u> This explanation must consist of "more than vague and general assertions that assets or records are no longer available." <u>Devani</u>, 556 B.R. at 41.

In assessing whether the debtor's failure to produce records is justified, the court will examine the particular circumstances of the case and ask "what a normal, reasonable person would do under similar circumstances." <u>Cacioli</u>, 463 F.2d at 235; <u>Meridian Bank v. Alten</u>, 958 F.2d 1226, 1231 (3d Cir. 1992). "[T]he debtor is not required to keep an impeccable system of bookkeeping or records so complete that he can satisfy an expert in business," but is required to produce sufficient records from which the court and the creditors can gain an accurate and complete picture of the debtor's finances. <u>Devani</u>, 556 B.R. at 41-42. The test for justification will also take into account "what can be expected of the type of person and type of business involved." <u>Cacioli</u>, 463 F.3d at 235 (quoting <u>Morris Plan Indus. Bank of N.Y. v. Dreher</u>, 144 F.2d 60, 61 (2d Cir. 1944)). In evaluating the debtor's circumstances, courts will consider several factors, including:

1. Whether the debtor was engaged in business, and if so, the complexity and volume of the business;

2. The amount of the debtor's obligations;

3. Whether the debtor's failure to keep or preserve books and records was due to the debtor's fault;

4. The debtor's education, business experience and sophistication;

5. The customary business practices for record keeping in the debtor's type of business;

6. The degree of accuracy disclosed by the debtor's existing books and records;

7. The extent of any egregious conduct on the debtor's part; and

8. The debtor's courtroom demeanor.

Kowalski, 316 B.R. at 602 (citing Krohn v. Frommann (In re Frommann), 153 B.R. 113, 117 (Bankr. E.D.N.Y. 1993)).

The record on this motion establishes that sufficient grounds exist to deny the Defendant's discharge under § 727(a)(3). In this case, the Plaintiff has made multiple discovery requests for records concerning the $1.5 million loans and their disposition, including "promissory notes…loan agreements" and "copies of checks, bills, invoices, bank statements, wire transfers and other documents." (Decl. Pl.'s Att'y Supp. Mot. Summ. J. Ex. 61 ¶¶ 19-20, at 23, ¶ 26, at 25, ECF No. 31; id. Ex. 63; id. Ex. 64 ¶ 6, at 2; id. Ex. 65 ¶ 91, at 22-23, ¶ 107, at 26.). Defendant did not have a bank account in his name during the relevant period. (Def.'s Dep. 209:19-210:7, Dec. 8, 2016, id. Ex. 42). Instead, he used bank accounts of his business entities to pay his personal expenses. (Def.'s Dep. 210:8-16, id. Ex. 42.). Defendant did not produce any bank statements of these accounts. (Def.'s Dep. 112:4-18, id. Ex. 42; Pl.'s Reply to Def.'s Aff. Opp'n 15, ECF No. 39; Mot. Withdraw Att'y ¶ 7, Case No. 16-41843, ECF No. 19.).  Although Plaintiff obtained some bank records from the banks, they do not reflect how the $1.5 million loan proceeds were spent and Defendant failed to provide any other records outlining the receipt or use of these proceeds. (Decl. Pl.'s Att'y Supp. Mot. Summ. J. ¶¶ 106-07, 125, 153, ECF No. 31; Def.'s Dep. 175:9-176:13, 180:6-181:2, 187:10-14, 190:3-13, 201:12-202:5, 202:19-203:9, 204:4-5, 205:12-206:20, 208:18-209:18, id. Ex. 42.). Without any evidence such as checks or bank statements reflecting receipt or disbursement of loan proceeds, or any identification or documentation of assets purchased with these funds, it is impossible to ascertain what happened to these substantial sums of money. Thus, Plaintiff has made a *prima facie* showing that Defendant failed to produce sufficient records.

The burden then shifts to the debtor to justify the deficiencies in his recordkeeping. The principal justification offered by the Defendant for his lack of records is that many of these loans were informal loans from family members and that they were incurred five to six years ago. (Def.'s Aff. Opp'n to Pl.'s Mot. Summ. J. ¶ 43, ECF No. 37.) Even if this were a sufficient explanation for the lack of documentation such as promissory notes or loan agreements, it does not explain or justify the lack of any records showing receipt of these funds and the lack of any records showing how the funds were spent. The total inadequacy of the Debtor's responses in this regard is illustrated by the following question and answer at his deposition:

> [Plaintiff's attorney]: I couldn't make as much money as you got between 2009 and 2012, which is 1.5 million. It seems a little unbelievable to me that you could spend that amount of money just on medical bills and other things, especially when you haven't shown anything to that effect, and as you know this adversary proceeding involves that very allegation that, you know, there's nothing to show, that you[ have] dissipated?
> [Defendant]: What do you mean I dissipated?
> [Plaintiff's attorney]: Where is this money?
> [Defendant]: Gone.

Def.'s Dep. 203:17-204:5, Decl. Pl.'s Att'y Supp. Mot. Summ. J. ex. 42, ECF No. 31.

Section 727(a)(3) was not meant to bar the discharge of ordinary consumer debtor. In Re Young, 346 B.R. 597, 607 (Bankr. E.D.N.Y. 2006). "[F]ew consumer debtors maintain anything more than, at most, a collection of bills, receipts and canceled checks, and, absent a sudden and large dissipation of assets, a discharge should not be denied in a typical consumer bankruptcy case due to a lack of books or records." PNC Bank, N.A. v. Buzzelli (In re Buzzelli), 246 B.R. 75, 98 (Bankr.W.D.Pa.2000) (internal quotation marks omitted). Therefore, in most cases, holes in a consumer debtor's financial records will not be enough to invoke § 727(a)(3). In re Hansen, 325

B.R. 746, 762 (Bankr. N.D. Ill. 2005). However, even if the Defendant could be considered an "ordinary consumer debtor," which is far from clear, the deficiencies here are hardly just "holes." Defendant failed to supply even "a collection of bills, receipts and canceled checks." Where there has been a " 'sudden and large dissipation of assets,' " the absence of records will warrant the denial of the debtor's discharge. Id. The loss of $1.5 million is clearly a considerable dissipation of assets in a seven-year period. Courts have denied discharge to debtors under § 727(a)(3) for failure to account for the loss of smaller amounts. See, e.g., In re Scott, 566 B.R. 471, 480 (N.D. Ohio 2017) (failure to produce records of expenditure of $1 million embezzled funds); In re Dehurst, 528 B.R. 211, 226 (D. Mass. 2015) (failure to keep records of disposition of $220,000). The amounts involved here, which constitute over 60% of Debtor's total scheduled liabilities, are substantial enough that an absence of records relating to these loans or the disposition of the proceeds warrant a denial of discharge under § 727(a)(3).

Neither § 727(a)(3) nor § 727(a)(5) sets forth any specific time period for which a debtor is required to account for his pre-petition financial condition. In Re Self, 325 B.R. 224, 243 (Bankr. N.D. Ill. 2005). A debtor should account for his business and personal transactions for a reasonable period prior to the commencement of the bankruptcy filing. Id. at 241. The determination of what constitutes a reasonable period prior to the filing must be measured on a case-by-case basis, taking into account all of the circumstances of the case. Id. at 241-42; see also In Re Losinski, 80 B.R. 464, 474 (Bankr. D. Minn. 1987) ("[T]he Bankruptcy Court should not circumscribe the inquiry which a trustee, creditor, or other party in interest may properly make under §§ 727(a)(3) and 727(a)(5) by setting a hard-and-fast rule limiting the inquiry to events and transactions occurring within a specific number of months or years before the bankruptcy case.").

Courts have extended their inquiry under § 727(a)(3) to as far as ten years before the commencement of the case. See Scott, 566 B.R. at 480 (failure to produce records of expenditure of funds embezzled between three to ten years before bankruptcy). Without any corroborating records, the Debtor's explanation that he used the $1.5 million to pay bills and expenses is insufficient. See Sonders v. Mezvinsky (In re Mezvinsky), 265 B.R. 681, 696 (Bankr. E.D. Pa. 2001) (because "the disposition of the overwhelming bulk of $1.4 million remains shrouded," the judge did not accept debtor's uncorroborated assertion that $27,500 were applied to living expenses). The loan transactions here were not too remote in time and Debtor's failure to supply records is not justified.

Application of the eight factors enumerated in Kowalski buttresses the conclusion that the debtor has not produced sufficient records. In re Sethi, 250 B.R. 831, 839 (Bankr. E.D.N.Y. 2000) (citing Kowalski, 316 B.R. at 602). Here, the debtor was engaged in business pre-petition; he had a law practice and a real estate consulting business. (341 Meeting Tr. 11:11-16, 23:9-24:6, Decl. Pl.'s Att'y Supp. Mot. Summ. J. Ex. 41, ECF No. 31; Def.'s Dep. 74:1-24, 86:5-87:23, 118:16-19, id. Ex. 42). The total obligations which the debtor seeks to discharge in this no-asset case are very substantial in amount – in excess of $2.3 million. Sethi, 250 B.R. at 840. With respect to whether the lack of records is due to the debtor's fault, the debtor has not contended that the records of these loans or records showing how the loan proceeds were used were destroyed or lost due to some event beyond his control, such as fire or theft. Id. As to the fourth factor, the debtor is educated: he has a law degree and was a practicing attorney for almost thirty years. With regard to the degree of accuracy disclosed by the debtor's existing books and records, Defendant simply did not provide any bank statements or other records showing the use of these loan proceeds. Although Plaintiff subpoenaed bank records of Defendant's business entities, these records do not reflect either the

deposit or disposition of $1.5 million and therefore do not clarify the key issue of how these proceeds dissipated.  For all these reasons, it is clear that the Defendant has failed to keep or preserve sufficient recorded information from which the debtor's financial condition or business transactions might be ascertained.

B.      Failure to explain deficiency of assets under 727(a)(5)

Section 727(a)(5) denies discharge to a debtor when "the debtor has failed to explain satisfactorily … any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(3). "The purpose of §727(a)(5) is to deter and punish debtors from 'abus[ing] the bankruptcy process by obfuscating the true nature of their affairs, and then refusing to provide a credible explanation.' " In re Mitsopoulos, 548 B.R. 620, 627 (Bankr. E.D.N.Y. 2016) (internal quotation marks omitted). To satisfy the initial evidentiary burden under § 727(a)(5), a plaintiff must establish that "(1) the debtor at one time possessed or claimed to control substantial and identifiable assets; (2) those assets have disappeared, their disposition or placement now unknown; and (3) no plausible explanation for this deficiency is apparent from the submitted records or has been articulated by the debtor." Id.

Once the plaintiff has satisfied its initial burden, the debtor must supply a "satisfactory" explanation for the failure to account for the missing assets. In re Mihalatos, 527 B.R. 55, 70 (Bankr. E.D.N.Y. 2015) (internal quotation marks omitted). "[T]he standard is one of reasonableness and credibility." In re Silverstein, 151 B.R. 657, 663 (Bankr. E.D.N.Y. 1993). "Section 727(a)(5) does not require that the explanation be meritorious." Id. Accordingly, "[t]he court need only decide whether the explanation satisfactorily describes what happened to the assets, not whether what happened to the assets was proper." Id. (internal quotation marks omitted).

11

It is apparent from the record that the Plaintiff has met her initial burden. It is undisputed that the Defendant received and disposed of the loan proceeds. The burden then shifts to the Defendant to provide a satisfactory explanation. According to the Defendant's deposition testimony, loan proceeds were used primarily to pay bills, living expenses and medical bills. (Def.'s Dep. 175:9-176:13, 190:3-12, 201:12-202:5, 208:18-209:2, Decl. Pl.'s Att'y Supp. Mot. Summ. J. Ex. 42, ECF No. 31.). However, Defendant did not substantiate his assertion with any checks, bills or bank statements. Courts have noted that "explanations of a generalized, vague, indefinite nature such as assets being spent on 'living expenses,' unsupported by documentation, are unsatisfactory." Mezvinsky, 265 B.R. at 690; see also In re Sharp, 244 B.R. 889, 895 (Bankr. E.D. Mich. 2000) (denying discharge under §727(a)(5) because the only evidence concerning sale proceeds of a car is debtor's testimony that he used the proceeds to "pay bills and expenses").

Like § 727(a)(3), § 727(a)(5) does not limit courts' inquiry to any specific time period pre-petition. Losinski, 80 B.R. at 472. Although a focus on the two years prior to the debtor's petition filing may be common, inquiries extending beyond two years certainly occur when warranted. In re Hermanson, 273 B.R. 538, 552 (Bankr. N.D. Ill. 2002) (citing cases). The existence of "lost assets of substantial value relative to debtors' liabilities" often warrants the extension of such two-year period. In re Stiff, 512 B.R. 893, 898 (Bankr. E.D. Ky. 2014); see, e.g., Blackwell Oil Co. v. Potts (In re Potts), 501 B.R. 711 (Bankr. D. Colo. 2013) (denying debtor's discharge in a case involving $1.4 million of unaccounted-for funds and assets in debtor's business four to seven years before petition); Hermanson, 273 B.R. at 551–52 (denying debtor's discharge for failure to account for approximately $1.3 million loan proceeds obtained six years before bankruptcy); In re Schachter, 214 B.R. 767 (Bankr. E.D. Penn. 1997) (loss or expenditure of $250,000 from home refinancing is a very large sum that Debtor should account for, despite the passage of seven years).

12

In this case, the unexplained loss of $1.5 million obtained during the period four to seven years prior to the bankruptcy justifies the application of § 727(a)(5). Defendant has failed to explain satisfactorily loss of substantial assets and has failed to offer any justification that would excuse his failure. Therefore, denial of discharge under § 727(a)(5) is warranted in this case.

C.      Other Claims

Given the conclusion that discharge should be denied under §§ 727(a)(3) and (5), the claims under §§ 523(a)(4), 727(a)(2) and 727(a)(4) will not be addressed. For this reason, too, the Debtor's motion to dismiss must be denied.

CONCLUSION

For the reasons stated above, the motion for summary judgment is granted and Defendant is denied a discharge pursuant to §§ 727(a)(3) and (5). A separate order will issue.



**Dated: Brooklyn, New York**
**January 19, 2018**

_____
                           **Carla E. Craig**
                  **United States Bankruptcy Judge**